**05-40082**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRINE, INC., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) CIVIL ACTION<br>) NO. |
| WARRIOR LACROSSE, INC., | )<br>) |
| Defendant. | )<br>)<br>) |

## COMPLAINT FOR DECLARATORY JUDGMENT

### Preliminary Statement

Warrior Lacrosse, Inc. ("Warrior") is now threatening Brine, Inc. ("Brine") with immediate legal action for what Warrior claims is Brine's tortious interference with the employment contracts of two individuals, its former employees, Ryan and Casey Powell. Brine's conduct is and has been appropriate competition and its hiring of Ryan and Casey Powell does not amount to tortious interference. For these reasons, Brine commences this action to declare that it is within its rights to (1) conduct its sporting goods business as it has done; (2) employ Ryan and Casey Powell in its business; and (3) not be subject to any threatened litigation and spurious claims for damages by Warrior over these issues.

### I.   JURISDICTION

1. This Court has jurisdiction over this declaratory judgment action pursuant to 28 USC § 2201.

2. The amount in controversy, exclusive of interest and costs, exceeds $75,000.

CTDOCS/1629287.2

RECEIPT # 404574
AMOUNT $ 250.00
SUMMONS ISSUED ✓
LOCAL RULE 4.1 ✓
WAIVER FORM ✓
MCF ISSUED ✓
BY DPTY. CLK. [signature]
DATE 5-27-05

## II. PARTIES

3. Brine, Inc., is a corporate citizen of the Commonwealth of Massachusetts with its principal place of business located at 47 Sumner Street, Milford, Massachusetts 01757.

4. Warrior Lacrosse, Inc. is a Michigan corporation with its principal place of business located at 31430 Mound Road, Warren, Michigan 48092.

## III. COUNT I

5. Brine is a sporting goods company engaged in the manufacture, distribution and sales of sports equipment.

6. Warrior competes with Brine in the sporting goods industry.

7. Brine hired Casey Powell as an employee on May 2, 2005.

8. Brine hired Ryan Powell as an employee on May 2, 2005.

9. Ryan and Casey Powell had previously been employed by Warrior until Warrior terminated its employment contracts with them on or about July 30, 2004. On information and belief, Warrior terminated the Powells' employment contracts without good cause. A true and accurate copy of Ryan Powell's employment agreement with Warrior is attached hereto as Exhibit A, and a true and accurate copy of Casey Powell's employment agreement with Warrior is attached hereto as Exhibit B.

10. Michael Powell signed an employment contract with Brine in 2004 and within one week Warrior terminated the employment contracts of his brothers, Ryan and Casey Powell.

11. Ryan and Casey Powell were not employed by Warrior for some ten (10) months before becoming employed by Brine.

12. Brine has now received a letter from Warrior's counsel accusing it of tortious interference with Warrior's contracts with Ryan and Casey Powell. A true and accurate copy of

that letter dated May 19, 2005 is appended hereto as <u>Exhibit C</u>.

13.  Brine's employment of Ryan and Casey Powell does not amount to an interference with any valid contract between Warrior and the Powells, nor was Brine's employment of the Powells for an improper purpose, or accomplished by improper means.

14.  Brine and Warrior now have an actual controversy between them concerning the validity of Ryan and Casey Powell's former employment contracts with Warrior, Warrior's claimed ability to enforce any post-termination provisions against Ryan and Casey Powell and/or Brine, and whether Brine's employment of Ryan and Casey Powell constitutes a tortious interference with Warrior's relationship with those two individuals..

### IV.  **PRAYER FOR RELIEF**

Brine now prays that this Court do the following:

(i)  Declare the rights and other legal relations of the parties, Brine and Warrior, to this dispute; and

(ii)  Grant such other relief as is appropriate.

> BRINE, INC.,
>
> By its attorneys,
>
> _____
> Louis A. Rodriques, BBO #424720
> Jenny K. Cooper, BBO #646860
> **BINGHAM McCUTCHEN LLP**
> 150 Federal Street
> Boston, MA  02110-1726
> (617) 951-8000

Dated: May 27, 2005



Case 4:05-cv-40082-FDS    Document 1-2    Filed 05/27/2005    Page 1 of 13

WARRIOR LACROSSE INC     Fax:5865787744           May 11 2005  15:15      P.09

*June 2003 - May 2004*

August 26, 2002

Mr. Ryan Powell
c/o Warrior Lacrosse, Inc.
31430 Mound Road
Warren, Michigan 48092

## EMPLOYMENT AGREEMENT

Dear Mr. Powell:

This letter contains the terms and conditions upon which Warrior Lacrosse, Inc., a Michigan corporation (the "Corporation") is willing to continue your employment.

1. **Title And Duties.** You shall render services in the area of product development and product testing as well as on-site promotional services at lacrosse events, trade shows, retail locations, lacrosse camps, and such other locations or functions as reasonably requested by the Corporation. Your duties shall be consistent with the general duties of a person performing such services and shall also include: (a) your obligation to use the Corporation's products and equipment at all times during the term of your employment when you play the sport of lacrosse, including during demonstrations, at clinics, during professional play and at practices; (b) make periodic and regular visits to lacrosse players and coaches to market and raise the visibility and awareness of the Corporation's products and equipment as directed by the Corporation; and (c) represent Warrior's interest in a professional, conscientious, and dignified manner. You shall also assume such additional duties as may be reasonably assigned to you by the Board of Directors or the President of the Corporation. In addition, you hereby agree that the Corporation is permitted to use your name and/or likeness in product endorsements, advertisements, and point of purchase displays or presentations for a period of six (6) years or the duration of your employment, whichever is longer.

Your services to the Corporation shall be rendered to the best of your ability and with loyalty to the Corporation. You shall not, during the term of your employment, render services to any person, firm, or corporation other than the Corporation, either within or outside of business hours; nor shall you have any interest, direct or indirect, in any business that is competitive with the business of the Corporation, other than ownership of not more than two (2%) percent of the outstanding stock of any corporation whose stock is held of record by more than five hundred (500) stockholders and is actively traded on a public exchange. Notwithstanding the foregoing and provided it does not interfere with your duties to the Corporation, you shall be permitted time to play lacrosse for the Major League Lacrosse team, attend and/or direct lacrosse camps, and represent on an endorsement basis companies that do not compete, directly or indirectly, with the Corporation; provided, however, that any endorsement contracts or arrangements shall require the prior written approval of the Corporation.

2. **Term.** The term of this Agreement shall be for six (6) years beginning on the date of June 1, 2003 unless otherwise specified, subject to earlier termination as provided herein (the "Term").

3. **Compensation And Benefits.** Your compensation for the services you render shall be as follows:

Mr. Ryan Powell
August 24, 2002
Page 2

4. **Salary.** Starting June 1, 2003 the Corporation shall pay you an annual salary as follows: Forty-Eight Thousand and 00/100 ($48,000.00) Dollars during the first (1st) year of the Term; Fifty-Four Thousand and 00/100 ($54,000.00) Dollars during the second (2nd) year of the Term; Sixty Thousand and 00/100 ($60,000.00) Dollars during the third (3rd) year of the Term; Sixty-Six Thousand and 00/100 ($66,000.00) Dollars during the fourth (4th) year of the Term; Seventy-Two Thousand and 00/100 ($72,000.00) Dollars during the fifth (5th) year of the Term; and Seventy-Eight Thousand and 00/100 ($78,000.00) Dollars during the sixth (6th) and final year of the Term. The salary payments will be made in equal installments during the year in question, less withholding and payroll taxes, at such times as the Corporation makes its payroll payments.

B. **Performance Bonus.** Starting June 1, 2003 you shall be eligible for a performance bonus based on the foregoing: During the Term hereof, in the event you are named "Player of the Year" for the Major League Lacrosse and/or receive the Major League Lacrosse scoring title, you shall be entitled to a performance bonus for the year in which such accomplishments are achieved, as follows:

| Years | MLL Player Of The Year | Scoring Title |
|---|---|---|
| 1-3 | $2,500.00 | $2,500.00 |
| 4-6 | $5,000.00 | $5,000.00 |

Any bonus payable hereunder shall be paid within ninety (90) days following the applicable Major League Lacrosse season.

C. **Discretionary Year End Bonus.** Starting June 1, 2003 you shall be eligible for a discretionary year end bonus of up to Five Thousand and 00/100 ($5,000.00) Dollars for years one (1) through three (3) of the Term, Seven Thousand Five Hundred and 00/100 ($7,500.00) Dollars for years four (4) and five (5) of the Term, and Ten Thousand and 00/100 ($10,000.00) Dollars for year six (6) of the Term. The year end bonus is based on profitability and is subject to approval of the Corporation's Board of Directors. Any bonus payable shall be paid within ninety (90) days following conclusion of the Corporation's fiscal year end.

D. **Royalty Payment.** You shall be entitled to a royalty payment in the amount of five (5%) percent of the net sales price (i.e., gross sales, less returns, discounts, allowances, freight charges, shipping and handling, and taxes)

WARRIOR LACROSSE INC   Fax:5869787744         May 11 2005  15:12    P. 02

*Thru May 2007*

June 1, 2001

Mr. Casey Powell
c/o Warrior Lacrosse, Inc.
31430 Mound Road
Warren, Michigan 48092

### EMPLOYMENT AGREEMENT

Dear Mr. Powell:

This letter contains the terms and conditions upon which Warrior Lacrosse, Inc., a Michigan corporation (the "Corporation") is willing to continue your employment.

1. **Title And Duties.** You shall render services in the area of product development and product testing as well as on-site promotional services at lacrosse events, trade shows, retail locations, lacrosse camps, and such other locations or functions as reasonably requested by the Corporation. Your duties shall be consistent with the general duties of a person performing such services and shall also include: (a) your obligation to use the Corporation's products and equipment at all times during the term of your employment when you play the sport of lacrosse, including during demonstrations, at clinics, during professional play and at practice; (b) make periodic and regular visits to lacrosse players and coaches to market and raise the visibility and awareness of the Corporation's products and equipment as directed by the Corporation; and (c) represent Warrior's interest in a professional, conscientious, and dignified manner. You shall also assume such additional duties as may be reasonably assigned to you by the Board of Directors or the President of the Corporation. In addition, you hereby agree that the Corporation is permitted to use your name and/or likeness in product endorsements, advertisements, and point of purchase displays or presentations for a period of six (6) years or the duration of your employment, whichever is longer.

Your services to the Corporation shall be rendered to the best of your ability and with loyalty to the Corporation. You shall not, during the term of your employment, render services to any person, firm, or corporation other than the Corporation, either within or outside of business hours; nor shall you have any interest, direct or indirect, in any business that is competitive with the business of the Corporation, other than ownership of not more than two (2%) percent of the outstanding stock of any corporation whose stock is held of record by more than five hundred (500) stockholders and is actively traded on a public exchange. Notwithstanding the foregoing and provided it does not interfere with your duties to the Corporation, you shall be permitted time to play lacrosse for the Major League Lacrosse team, attend and/or direct lacrosse camps, and represent on an endorsement basis companies that do not compete, directly or indirectly, with the Corporation; provided, however, that any endorsement contracts or arrangements shall require the prior written approval of the Corporation.

2. **Term.** The term of this Agreement shall be for six (6) years beginning on the date hereof, subject to earlier termination as provided herein (the "Term").

3. **Compensation And Benefits.** Your compensation for the services you render shall be as follows:

WARRIOR LACROSSE INC    Fax:5869767744         May 11 2005  15:12    P.05

Mr. Casey Powell
June 1, 2001
Page 2

A. **Salary.** The Corporation shall pay you an annual salary as follows: Forty-Eight Thousand and 00/100 ($48,000.00) Dollars during the first (1st) year of the Term; Fifty-Four Thousand and 00/100 ($54,000.00) Dollars during the second (2nd) year of the Term; Sixty Thousand and 00/100 ($60,000.00) Dollars during the third (3rd) year of the Term; Sixty-Six Thousand and 00/100 ($66,000.00) Dollars during the fourth (4th) year of the Term; Seventy-Two Thousand and 00/100 ($72,000.00) Dollars during the fifth (5th) year of the Term; and Seventy-Eight Thousand and 00/100 ($78,000.00) Dollars during the sixth (6th) and final year of the Term. The salary payments will be made in equal installments during the year in question, less withholding and payroll taxes, at such times as the Corporation makes its payroll payments.

B. **Performance Bonus.** You shall be eligible for a performance bonus based on the foregoing. During the Term hereof, in the event you are named "Player of the Year" for the Major League Lacrosse and/or receive the Major League Lacrosse scoring title, you shall be entitled to a performance bonus for the year in which such accomplishments are achieved, as follows:

| Years | MLL Player Of The Year | Scoring Title |
|---|---|---|
| 1-3 | $2,500.00 | $2,500.00 |
| 4-6 | $5,000.00 | $5,000.00 |

Any bonus payable hereunder shall be paid within ninety (90) days following the applicable Major League Lacrosse season.

C. **Discretionary Year End Bonus.** You shall be eligible for a discretionary year end bonus of up to Five Thousand and 00/100 ($5,000.00) Dollars for years one (1) through three (3) of the Term, Seven Thousand Five Hundred and 00/100 ($7,500.00) Dollars for years four (4) and five (5) of the Term, and Ten Thousand and 00/100 ($10,000.00) Dollars for year six (6) of the Term. The year end bonus is based on profitability and is subject to approval of the Corporation's Board of Directors. Any bonus payable shall be paid within ninety (90) days following conclusion of the Corporation's fiscal year end.

D. **Royalty Payment.** You shall be entitled to a royalty payment in the amount of five (5%) percent of the net sales price (i.e., gross sales, less returns, discounts, allowances, freight charges, shipping and handling, and taxes) actually received by the Corporation on all sales of the Corporation's

WARRIOR LACROSSE INC    Fax:5059787744    May 11 2005 15:13    P.04

Mr. Casey Powell
June 1, 2001
Page 3

products bearing the "CP22" logo or the "Casey Powell" name. To be eligible for this royalty, the "CP22" logo or "Casey Powell" name must be on the product itself as opposed to in advertisements, on hang tags, or otherwise. The Corporation and you shall meet and agree upon a schedule of such products, which we may amend from time to time by our mutual agreement. Such payments shall be made by the end of the month following the month in which the Corporation receives payment for such sales.

E. **Employment Benefits.** You will be entitled to participate (after meeting general eligibility requirements and on the same basis as other employees) in all pension, profit sharing, insurance, and all other fringe benefit programs maintained by the Corporation for the benefit of its employees as set forth in the existing policies of the Corporation, as each or all may be modified from time to time by the Board of Directors, on the same basis as currently provided to you.

F. **Automobile.** During the Term hereof, the Corporation will make available for your use a luxury automobile, the lease payment of which shall be paid by the Corporation. You acknowledge that such automobile has been provided to you. The Corporation will also pay for the insurance coverage on that automobile. You will be responsible for any increase in the insurance premium due to your own actions or neglect. Upon termination of your employment, for whatever reason, you shall promptly return that vehicle to the Corporation in good condition, less reasonable wear and tear.

G. **Vacation.** You shall be entitled to two (2) weeks of paid vacation per year.

4. **Business Expenses.** The Corporation shall pay or reimburse you promptly upon presentation of appropriate vouchers for all travel, business, and entertainment expenses reasonably and necessarily incurred by you in connection with the Corporation's business and approved of in advance (when possible) by the Corporation.

5. **Termination.** This Agreement shall terminate upon your death or disability or may be terminated by the Corporation without cause or for cause, or by you voluntarily, subject to the survival of certain obligations of the Corporation and you which are specifically provided for herein.

A. **Disability.** Disability shall mean physical or mental illness that, in the reasonable opinion of the Board of Directors of the Corporation, results in your inability to perform the duties required under this Agreement for (i) a period of three (3) consecutive months, or (ii) any six (6) months within any twenty-four (24) month period. Such disability shall constitute a termination for cause, as described below.

WARRIOR LACROSSE INC    Fax:5869787744    May 11 2005 15:13    P. 05

Mr. Casey Powell
June 1, 2001
Page 4

B. **Termination Without Cause.** The Corporation may terminate this Agreement upon thirty (30) days written notice without cause. If this Agreement is terminated by the Corporation without cause, you shall be entitled to receive (i) any accrued but unpaid salary, and (ii) severance pay equal to three (3) months salary (less withholding and payroll taxes). Except as stated herein, you shall not be entitled to any further compensation or benefits.

C. **Termination For Cause.** This Agreement may be terminated by the Corporation for cause at any time. Termination shall be deemed to be "for cause" if you have been dismissed for conviction of a felony, for a material breach of this Agreement by you, failure to perform your obligations hereunder in a competent and conscientious manner, conducting yourself in a manner which reflects negatively on the good name and reputation of the Corporation, or otherwise places the Corporation (or could, in the opinion of the President of the Corporation, place the Corporation) in a negative light, breach of confidentiality provisions as set forth in Section 6 below, or for disability as described in the first paragraph of this Section 5. In such case, you will not be entitled to receive any further compensation or benefits.

D. **Voluntary Termination.** If you voluntarily terminate your employment, the Corporation will have no further obligation to you under this Agreement. You shall, nevertheless, be subject to Sections 6 and 7 below. Except as otherwise provided herein, your salary and benefits are payable only through the date of termination. Any salary payable to you for the period prior to termination shall be prorated on a daily basis.

6. **Confidentiality And Non-Compete.**

A. You shall not, during the Term of this Agreement or after termination, directly or indirectly,

(i) Attempt to induce any employee of the Corporation or any related or affiliated company to render services for any other employer; or

(ii) Use or furnish to anyone (except as required in the ordinary course of performing your employment duties for the Corporation) any confidential information or trade secrets ("Confidential Data") relating to the Corporation's business, including information relating to processes, or contracts involved in such business, or the design, production, sale, or distribution of any products of the Corporation, or the personnel of the Corporation or their compensation or employment arrangements, or the identity of, or products purchased

NO. 241    P. 8/18

MAY. 23. 2005    2:11PM    BRINE INC.

WARRIOR LACROSSE INC    Fax:5869797744    May 11 2005  15:14    P.05

Mr. Casey Powell
June 1, 2001
Page 5

or prices paid by, customers of the Corporation. Records prepared by you or that come into your possession during the Term of your employment are and remain the property of the Corporation, and when your employment terminates, such records and any copies or summaries must be left with the Corporation. You agree that because of the irreparable injury which the Corporation will suffer if such Confidential Data is disclosed, the Corporation shall be entitled to injunctive relief if you violate this paragraph, in addition to any other remedy provided by law.

B. In recognition of the highly competitive nature of the Corporation's business, you further agree as follows:

(i) You shall not, during and for the period commencing with the date of this Agreement and ending on the date that is three (3) years after the termination of this Agreement or the termination of your employment, directly or indirectly engage in the design, development, prototype, manufacturing, marketing, sale, or distribution of any products or services that are identical or similar to the products or services offered by the Corporation as of the date of this Agreement or at any time during the Term of your employment ("Business Activities") (other than on behalf of the Corporation or any affiliated company) whether such engagement is as an officer, director, proprietor, employee, partner, consultant, advisor, agent or otherwise, in the continental United States, or Ontario, Canada.

(ii) You will not, during and for the period commencing with the date of this Agreement and ending on the date that is three (3) years after the termination of this Agreement or the termination of your employment, directly or indirectly engage in any Business Activities (other than on behalf of the Corporation or any affiliated company) by supplying products or providing services heretofore provided or supplied to any customer with whom the Corporation has done any business, whether as an officer, director, proprietor, employee, partner, consultant, advisor, agent or otherwise.

(iii) You will not, during and for the period commencing with the date of this Agreement and ending on the date that is three (3) years after the termination of this Agreement or the termination of employment, directly or indirectly solicit any current customers or employees of the Corporation (or any affiliated company) or any customers or employees of the Corporation (or any affiliated company) who were such during the Term of your employment, or

WARRIOR LACROSSE INC    Fax:5869797744              May 11 2005  15:14      P. 07

Mr. Casey Powell
June 1, 2001
Page 6

assist others in engaging in any of the Business Activities in the manner prohibited to you.

It is expressly understood and agreed that although you and the Corporation consider the restrictions in this Agreement with respect to this Section 6B to be reasonable for the purposes of preserving the Corporation's goodwill, proprietary rights and going business value, if a final judicial determination is made by a court having jurisdiction that the time or territory or any other restriction contained in this Section 6B is an unenforceable restriction on your activities, the provisions of this subsection shall not be rendered void, but shall be deemed amended to apply as to such maximum time and territory and to such other extent as such court may judicially determine or indicate to be reasonable. Alternatively, if the court referred to above finds that any restriction contained in this subsection is unenforceable, and such restriction cannot be amended so as to make it enforceable, such findings shall not affect the enforceability of any of the other restrictions contained herein.

The provisions of this Section 6B shall in no respect limit or otherwise affect your obligations under other agreements with the Corporation. Furthermore, if this Agreement is terminated by the Corporation without cause and there is a breach of any of the provisions of this subsection, then notwithstanding Section 5, you shall not be entitled to receive any amount of severance pay that would otherwise be paid to you under that provision, and the Corporation may pursue any legal or equitable remedy for such breach or threatened breach.

7. **Assignment Of Materials.** You hereby assign and transfer to the Corporation your entire right, title and interest in and to all inventions (as used in this Agreement, "inventions" shall include, but not be limited to, improvements, designs, products, brochures, catalogs and related sales and marketing material), whether or not capable of being patented or copywritten and whether or not reduced to practice, made or conceived by you (whether made solely by you or jointly with others), during the period of your employment with the Corporation, and for a period of twelve (12) months thereafter, which relate in any manner to the business, work, or research and development of the Corporation, or result from or are suggested by any task assigned to you or any work performed by you for or on behalf of the Corporation. You agree that all such materials are the sole property of the Corporation.

8. **Successors Or Assigns.** This Agreement shall be binding upon the successors and assigns of the Corporation, any assigns of all or substantially all of its business, and any other corporation into which the Corporation may be merged or with which it may be consolidated. This Agreement, and any rights you may have to receive payments, may not be assigned or pledged by you.

9. **Other.** Any dispute or claim involving this Agreement shall be settled by an arbitration in Southfield, Michigan under the rules of the American Arbitration Association. Any dispute or claim shall be deemed waived unless arbitration is demanded within ninety (90) days of the occurrence giving rise to the dispute or claim. The arbitrator shall have no authority to change any provision of this

WARRIOR LACROSSE INC   Fax:5859767744          May 11 2005  15:15    P.08

Mr. Casey Powell
June 1, 2001
Page 7

Agreement; the arbitrator's sole authority shall be to interpret or apply the provisions of this Agreement. The decision of the arbitrator shall be final and binding and the exclusive remedy for any alleged breach of the employment relationship. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. Notwithstanding the foregoing, the parties consent to the Federal District Court for the Eastern District of Michigan or the Oakland County Circuit Court as the courts with exclusive jurisdiction and venue relating to any disputes arising under this Agreement which are not subject to arbitration, such as the request for injunctive relief.

This Agreement contains our entire agreement and supersedes all prior oral or written understandings and agreements. We can modify this Agreement only by a writing signed by both you and the Corporation. This Agreement is governed by the laws of the State of Michigan.

WARRIOR LACROSSE, INC.

By: [signature]

Its: President

**ACCEPTED AND AGREED**

I hereby accept employment with the Corporation upon the terms and conditions contained herein.

[signature] Casey Powell    6/18/01
CASEY POWELL              Date



**WARNER NORCROSS & JUDD LLP**
ATTORNEYS AT LAW
2000 TOWN CENTER
SUITE 2700
SOUTHFIELD, MICHIGAN 48075-1318
TELEPHONE: 248.784.5000
FAX: 248.784.5005

JAMES E. ROMZEK
248.784.5130
Direct Fax: 248.603.8730
jromzek@wnj.com

May 19, 2005

Brine, Inc.
47 Sumner Street
Milford, Massachusetts 01757

ATTN: Mr. Sean Fox, President

Re: Casey and Ryan Powell

Dear Mr. Fox:

We represent Warrior Lacrosse, Inc. ("Warrior"), and I write to you on its behalf. Warrior has recently learned that Brine, Inc. ("Brine") has employed or otherwise retained the services of Casey and Ryan Powell, former employees of Warrior.

As Brine is well aware, Casey and Ryan Powell entered into Employment Agreements with Warrior that explicitly prohibit them from working for Brine. These Employment Agreements (which I have enclosed with this letter), among other things, prohibit Casey and Ryan Powell from the following actions for a period of three years after their separation from Warrior: (1) engaging in the design, development, prototype, manufacturing, marketing, sale or distribution of any products or services that are identical or similar to the products or services offered by Warrior ("Business Activities"); (2) engaging in any Business Activities by supplying products or providing services to any customer of Warrior; or (3) soliciting any current or former customers or employees of Warrior. Moreover, the Employment Agreements prohibit Casey and Ryan Powell from using or disclosing to anyone outside of Warrior the confidential and trade secret information learned of during the course of their employment with Warrior.

Casey and Ryan Powell's affiliation with Brine is a clear violation of the contractual restrictions contained in their Employment Agreements with Warrior, given that, among other things, Brine is unquestionably a direct competitor of Warrior, and sells products similar to those sold by Warrior. In addition, due to the significant amounts expended by Warrior to create the marketing images using Casey and Ryan Powell to advertise or market Warrior's products, we are confident that a court will enjoin these breaches of their contractual restrictions and award Warrior the damages incurred based on these breaches. We further

Brine, Inc.
May 19, 2005
Page 2

believe that Casey and Ryan Powell have disclosed or will inevitably disclose to Brine the trade secret information they learned of as a result of their employment with Warrior, such as Warrior's proprietary design, production, sale, distribution and customer pricing information.

Based on this very serious violation of their Employment Agreements, Warrior intends to immediately enforce its rights against Casey and Ryan Powell by seeking relief from the appropriate court to enjoin these violations of the Employment Agreements and to recover the significant damages incurred by Warrior as a result of the Powells' improper conduct. In addition, Warrior intends to avail itself of all of its legal rights and remedies against Brine, should Brine continue its affiliation with Casey and Ryan Powell, based on Brine's tortious interference with the contracts which Casey and Ryan Powell have with Warrior and the conspiracy engaged in by the Powells and Brine relative to these violations of their Employment Agreements.

We await your immediate assurance that Brine will discontinue its association with the Powells (for the remainder of the restrictive period), or Warrior will be forced to aggressively protect its interests.

Sincerely,

James E. Romzek

Enclosures

c:  Mr. Mike Martin (w/encls.)
    Mr. Casey Powell (w/out encl.)
    Mr. Ryan Powell (w/out encl.)
    Warrior Lacrosse, Inc.

JER/dp

086624.086624 GR1119461-1

05-40082

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Brine, Inc.

### DEFENDANTS
Warrior Lacrosse, Inc.

(b) County of Residence of First Listed Plaintiff: Worcester
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Louis A. Rodriques, Jenny K. Cooper, Bingham McCutchen LLP
150 Federal Street, Boston, MA 02110 (617) 951-8000

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY / PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine / PERSONAL PROPERTY | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | LABOR | SOCIAL SECURITY | ☐ 810 Selective Service |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| REAL PROPERTY | CIVIL RIGHTS / PRISONER PETITIONS | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment / Habeas Corpus: | ☐ 791 Empl. Ret. Inc. Security Act | FEDERAL TAX SUITS | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Title 28 U.S.C. section 2201
Brief description of cause:
Declaratory Judgment

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE: May 27, 2005
SIGNATURE OF ATTORNEY OF RECORD: /s/ Jenny K. Cooper

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# 05-40082

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. **Title of case (name of first party on each side only)** Brine, Inc. v. Warrior Lacrosse, Inc.

2. **Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.** (See local rule 40.1(a)(1)).

   - [ ] I.   160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.
   - [ ] II.  195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,   *Also complete AO 120 or AO 121
             740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.           for patent, trademark or copyright cases
   - [X] III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
              315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
              380, 385, 450, 891.
   - [ ] IV.  220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
              690, 810, 861-865, 870, 871, 875, 900.
   - [ ] V.   150, 152, 153.

3. **Title and number, if any, of related cases.** (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   N/A

4. **Has a prior action between the same parties and based on the same claim ever been filed in this court?**

   YES [ ]   NO [X]

5. **Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?** (See 28 USC §2403)

   YES [ ]   NO [X]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

   YES [ ]   NO [ ]

6. **Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?**

   YES [ ]   NO [X]

7. **Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division?** - (See Local Rule 40.1(d)).

   YES [X]   NO [ ]

   A. If yes, in which division do all of the non-governmental parties reside?

   Eastern Division [ ]   Central Division [X]   Western Division [ ]

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

   Eastern Division [ ]   Central Division [ ]   Western Division [ ]

8. **If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?** (If yes, submit a separate sheet identifying the motions)

   YES [ ]   NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME Louis A. Rodriques, Jenny K. Cooper
ADDRESS Bingham McCutchen LLP, 150 Federal Street, Boston, MA 02110
TELEPHONE NO. (617) 951-8000

(CategoryForm.wpd - 5/2/05)